MR

**FILED**

JUN 07 2024 JB

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATED DISTRICT COURT
## FOR THE NORTHERN DISTRICT, EASTERN DIVISION

Susan Bogart d/b/a Law Offices of Susan Bogart,  )
an Illinois sole proprietorship,                  )
                                                   )
                     Plaintiff,                    )
                                                   )
          v.                                       )   24cv4770
                                                   )   Judge Bucklo
Paul Thanasides, McIntyre Thanasides Bringgold    )   Magistrate Judge Weisman
Elliot Grimaldi Guito & Matthews, P.A., a Florida )   Randomly Assigned CAT 2
Professional Association, Maximillian Amster,      )
Veridis Management LLC, a Delaware Limited         )
Liability Company, Devan Padmanabhan,              )
and Padmanabhan & Dawson, PLLC, a Minnesota        )
Professional Liability Company,                    )   **JURY TRIAL DEMANDED**
                                                   )
                     Defendants.                   )

## COMPLAINT

Plaintiff, Susan Bogart d/b/a Law Offices of Susan Bogart ("Plaintiff" and "Bogart") by and through its attorney, Susan Bogart, brings this action against Paul Thanasides ("Thanasides"), McIntyre Thanasides, Bringgold, Elliot, Grimaldi, Guito & Matthews ("McIntyre Law Firm"), Maximillian Amster ("Amster"), Veridis Management LLC ("Veridis"), Ballast Funding LLC ("Ballast"), Devan Padmanabhan ("Padmanahbhan") and Padmanabhan & Dawson ("Padda Law Group") ("Defendants"), and allegers as follows:

### INTRODUCTION

1. For nineteen months, from November 17, 2017 through June 10, 2019, Susan Bogart, the Law Offices of Susan Bogart with the assistance of attorney Eric Cohen successfully represented and benefitted NEXT Payment Solutions, Inc. ("NEXT") by drafting pleadings, conducting pretrial proceedings, including reviewing, producing and conducting voluminous discovery, prevailing on CCI's pretrial dispositive motions, and preparing the matter for an August

1

8, 2019 trial in NEXT's federal litigation against CLEAResult Consulting Inc. ("CCI") in the matter titled *Next Payment Solutions, Inc. v. CLEAResult Consulting, Inc.*, 17 C 8829, pending in the U.S. district court for the Northern District of Illinois, an Illinois law firm, in which NEXT alleged *inter alia* that CCI stole NEXT trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), the Illinois Trade Secrets Act ("ILTSA"), breached CCI's contract with NEXT and unjustly enriched itself with NEXT's trade secrets that it stole.

2.   But then, abruptly, Paul Thanasides, the McIntyre Law Firm, Maximillian Amster, Veridis Management LLC, Devan Padmanabhan and the Padda Law Group interfered with Bogart's contract and prospective business with NEXT, destroying what Bogart and Cohen spent 3, 614.36 hours over 19 months building, in an effort to deprive Bogart of its hard earned success and to line their own pockets, by use of improper means, including imposing undue influence on NEXT in connection with providing additional litigation financing in violation of Rule 1.8 of the Illinois Rules of Professional Responsibility, conflicts of interest, violations of Rules of Professional Conduct, fabrications and misrepresentations of their qualifications and competence to handle NEXT's litigation, court orders, applicable law, Bogart's performance and the needs of the case and requirements for trial.

3.   As a result, Plaintiff suffered substantial losses in excess of $ 2 million dollars.

4.   This action is brought to recover damages for the injuries and losses Bogart incurred that were caused by Defendants' tortious interference with contract, tortious interference with prospective business opportunities and conspiracy.

## THE PARTIES

5.   At all times relevant, Susan Bogart was a resident of, and licensed to practice law in,

the State of Illinois in 1978 with 39 years' experience in complex federal litigation and trials, particularly in the federal courts in the Northern District of Illinois.

6.  At all relevant times, the Law Offices of Susan Bogart was a sole proprietorship with offices located at 111 W. Jackson Blvd., Ste. 1700, Chicago Illinois and, for purposes of the NEXT litigation had associated with Eric Cohen, an attorney licensed in Illinois and North Carolina, who had practiced more than 40 years in the Intellectual Property area, including prosecuting and defending trade secrets violations. The Law Offices of Susan Bogart, Susan Bogart, Eric Cohen and his firms Brinks Gilson and Rimon Law entered into agreements with NEXT Payment Solutions, Inc. ("NEXT"), an Illinois corporation with its principal place of business on 312 Hedge Run, Highland Park Illinois to represent NEXT in litigation with CLEAResult Consulting, Inc. ("CCI").

7.  At all relevant times, Paul Thanasides was a resident of and an attorney licensed to practice law in the state of Florida in 1997. At all times relevant, Mr. Thanasides practiced law with the McIntyre Thanasides Bringgold Elliott Grimaldi Guito Matthews, P.A. ("McIntyre Law Firm")

8.  The McIntrye Law Firm is a professional association with its principal place of business at 1228 E. 7th Ave. Ste. 100, Tampa Florida, previously 500 E. Kennedy Blvd., Ste. 200, Tampa, Florida, and offices located in Sarasota Florida.

9.  At all relevant times, Maximillian Amster ("Amster") is the Chief Executive Officer ("CEO") and Founder of Veridis Management LLC. ("Veridis") and resident of Tampa Florida. Amster is also licensed to practice law in Florida, reflecting an address of 1700 S. MacDill Ave, Ste. 300, Tampa, Florida 33626-5244.

3

10. At all relevant times, Veridis Management LLC ("Veridis") was a Delaware Limited Liability Company with its principal place of business at 1700 S. MacDill Ave., Ste. 300, Tampa Florida. Delaware LLCs are not required to identify their members. Upon information and belief, Maximilliam Amster as CEO and Founder is a member of Veridis. Also, Veridis' Director Managing Director of Investments and member of the GP Advisory Committee, Samuel Salario, is a Florida attorney and shareholder in the Florida firm, Lawson, Huck, Gonzalez PLLC. Veridis' registered agent is Delaware Corporations LLC., 1000 N. West St., Ste. 1501, Wilmington DE 19801. Veridis was an investment management company that invested in complex litigation claims.

11. At all relevant times, Devan Padmanabhan ("Padmanabhan") was a resident of and an attorney in Minnesota licensed to practice law in 1993 and was a partner and founder of the Minneapolis Minnesota law firm Padmanabhan and Dawson, PLLC ("Padda Law Group").

13. At all relevant times, the Padda Law Group was a Minnesota based law firm with its principal place of business at 9800 Shelard Parkway, Ste. 120, Minneapolis, MN 55441, previously 45 South 7th St., Ste. 2315, Minneapolis, MN 55402. The firm focuses on certain matters within the Intellectual Property area.

### JURISDICTION

14. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $ 75, 000.

15. This Court has personal jurisdiction over Defendants Paul Thanasides and the McIntrye Law Firm because Mr. Thanasides and other attorneys with the McIntyre Law firm entered pro hac vice appearances in this Court on June 12, 2019 (Dkt. 345, 346) which were granted on June 13, 2019 (Dkt. 348) on behalf of NEXT Payment Solutions, Inc. ("NEXT") in the case *NEXT*

4

*Payment Solutions Inc. v. CLEAResult Consulting, Inc.,* 17 C 8829 ("*NEXT v. CCI*") and continue to represent NEXT.

16. This Court has personal jurisdiction over Defendants Devan Padmanabhan and the Padda Law Group because Mr. Padmanabhan and other attorneys with the Padda Law Group entered pro hac vice appearances in this Court on June 10, 2019 (Dkt. 327-330) which were granted on June 13, 2019 (Dkt. 348) on behalf of NEXT Payment Solutions, Inc. ("NEXT") in the case *NEXT Payment Solutions Inc. v. CLEAResult Consulting, Inc.,* 17 C 8829 ("*NEXT v. CCI*") and continue to represent NEXT.

17. This Court has personal jurisdiction over Defendants Maximillian Amster and Veridis Management LLC. ("Veridis") because Mr. Amster on behalf of Veridis and its fund Ballast Funding LLC. travelled to Chicago, IL to meet Matt Peterson, Chief Executive Officer of NEXT Payment Solutions, Inc. ("NEXT") for the purpose of providing litigation funding to NEXT in the matter of *NEXT v. CCI*, 17 C 8829 pending in the U.S. district court for the Northern District of Illinois and, on or about September 8, 2018, executed a Prepaid Forward Purchase Agreement between Ballast Funding LLC and NEXT Payment Solutions, Inc. Amster also executed Amended Restated Prepaid Forward Purchase Agreements between Ballast Funding LLC and NEXT to provide additional funding in the *NEXT v. CCI* litigation on June 21, 2019, March 2, 2020 and May 10, 2021.

19. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (a) (2) because a substantial part of the events giving rise to the claim occurred, or a substantial part of property that is the subject of the action was situated in this district.

## FACTS UNDERLYING THE CLAIMS IN THIS ACTION

### A. NEXT hires Bogart to Pursue Its Claims Against CLEAResult

20.     NEXT Payment Solutions, Inc. ("NEXT") is an Illinois corporation formed in 2011, which licenses software in interstate commerce to customers, including Office Depot and CLEAResult Communications, Inc. ("CLEAResult").

21.     CLEAResult is a Texas corporation that implements programs for utility companies to increase homeowner's energy efficiency.

22.     Beginning in 2014, NEXT licensed software to enable CLEAResult to service customers who were located in Michigan, Ohio, Illinois and Iowa, among other places.

23.     In November 2017, NEXT, contacted Bogart seeking legal representation related to its concern that CLEAResult was not adhering to the terms of its licensing agreement and was copying NEXT's software.

24.     Bogart had more than 39 years' experience as an attorney in the Chicago Illinois community. Early in her career she clerked by experienced former federal prosecutors and criminal defense attorneys, served as a law clerk to U.S. federal district court Judge Stanley J. Roskowski of the Northern District of Illinois and as an assistant with the U.S. Attorney's Office in the N.D. of Illinois.  Bogart had tried a broach range of more than 100 jury and bench trials in the federal district and state courts, including complex civil, commercial and criminal litigation.

25.     After discussions with Matt Peterson, CEO of NEXT, Bogart, with Mr. Peterson's consent, reached out to Eric Cohen a well-respected attorney in the Chicago Illinois and national communities with extensive trial and other experience in the area of intellectual property, including trade secrets litigation.

26.     On November 9, 2017, NEXT engaged Bogart to investigate CLEAResult's misappropriation of NEXT's trade secrets.

6

27.     On November 9, 2017, NEXT executed an engagement agreement (hereinafter the "2017 Agreement"), retaining Bogart as lead counsel to represent it in connection with a potential lawsuit against CLEAResult for, inter alia, breach of contract, breach of confidentiality provisions, and theft of trade secrets under the federal Defend Trade Secrets Act (18 U.S.C. § 1836) and Illinois law. (*Id.*)

28.     On May 21, 2018, NEXT and Bogart entered into a new engagement agreement (the "2018 Agreement"). This Agreement provided that Bogart (and Cohen) would represent it in connection with a potential lawsuit against CLEAResult for, inter alia, breach of contract, breach of confidentiality provisions, and theft of trade secrets under the federal Defend Trade Secrets Act (18 U.S.C. § 1836) and Illinois law. (*Id.*) This Agreement provided that NEXT would compensate Bogart and Cohen for their legal services under a Partial Contingent Fee Agreement whereby Bogart and Cohen undertook the risk and agreed to be compensated by NEXT from any recovery NEXT might receive in the litigation against CCI. Specifically, as is pertinent here, Bogart and Cohen would receive a percentage recovery from any recovery, including 40% of a recovery if it was received 30 days after the original trial date.

**B.   Bogart and Cohen Successfully Prosecute NEXT's Claims for Nineteen Months and Secure an August 2019 Trial Date.**

29.     On December 7, 2017, Bogart filed a complaint on NEXT's behalf in the U.S. federal district court for the Northern District of Illinois, E.D against CLEAResult Consulting Inc. ("CCI"). (Dkt. 1).

30.     On January 3, 2018, CCI filed a motion to dismiss that complaint. (Dkt 13-17).

31.     NEXT responded to that motion on January 10, 2018. (*Id.* at Dkt. 23)

32.     On January 5, 2018, NEXT filed a motion for preliminary injunction and expedited discovery. (*Id.* Dkt. 18).

7

33. On January 19, 2018, the case was reassigned to Chief Judge Castillo (Id. Dkt. 28), who, on January 30, 2018, granted the motion to dismiss without prejudice and without an opinion on CLEAResult's arguments. (*Id.* at 31).

34. On March 1, 2018, NEXT filed a Verified Amended Complaint ("VAC") alleging claims *inter alia* for violation of the Defend Trade Secrets Act ("DTSA"), breach of contract, unjust enrichment, promissory estoppel, fraud and unfair competition. (Dkt. 36).

35. CCI opposed NEXT's motion for expedited discovery and preliminary injunction (Dkt. 57, 58).

36. On March 30, 2018, CCI moved to dismiss the VAC. (Dkt. 45, 47)

37. On April 17, 2018, Judge Castillo granted NEXT's motion for expedited discovery and set a preliminary injunction hearing and trial on the merits for September 10, 2018 and entered an order setting the date for NEXT to respond to CCI's motion to dismiss; and setting July 31, 2018 for close of all discovery; and set April 20, 2018 for NEXT to file its proposed order regarding a standstill and April 25, 2018 for CCI's response. (Dkt. 65) The Court also set a settlement conference on May 5, 2018, which was rescheduled to May 15. (Dkt. 65, 73.)

38. NEXT took the first deposition-that of Jane Nelson-- on May 15, 2018. (Dkt. 127-1).

39. In the Federal Litigation, CLEAResult produced in excess of 140,000 documents totaling approximately 500,000 pages, and over 150 videos lasting anywhere from 30 minutes to 3 hours each. (Dkt. 127) CLEAResult produced documents on the following dates (*Id.*):

| Date | No. Docs. Produced |
|------|-------------------|
| 6/8/18 | 865 |
| 6/25/18 | 10,214 |

| Date | No. Docs. Produced |
|------|--------------------|
| 7/2/18 | 122,065 |
| 7/3/18 | 621 |
| 7/9/18 | 7,682 |
| 7/11/18 | 3 |
| 7/13/18 | 146 |

40.     In order to obtain documents from CLEAResult in a timely manner, Bogart moved to compel production, and the Court ordered CLEAResult to produce documents by July 6, 2018. (Dkt. 93)

41.     CLEAResult initially designated approximately 76,000 of the documents that it produced as attorneys' eyes only under the protective order that had been entered by Judge Castillo, which prevented NEXT from having access to those documents.

42.     NEXT moved to compel CLEAResult to re-designate the AEO documents as Confidential so that NEXT could review them.  (Dkt 102.). The Court ordered CLEAResult to re-designate all of the AEO documents to Confidential. (Dkt. 125.)

43.     CLEAResult served Interrogatories and Document Requests on NEXT. Interrogatory 21 of CLEAResult's Second Set of Interrogatories requested NEXT to identify "each alleged trade secret that NEXT alleges CLEAResult misappropriated from NEXT."

44.     On July 6, NEXT served an answer to Interrogatory 21, which was verified on July 11.

45.     On July 13, 2018, CLEAResult moved to compel responses to Interrogatory 21. (Dkt. 104.).

46.     On July 16, 2018, NEXT served its opening expert report of its technical expert, Dr. Ricardo Valerdi, which described NEXT's trade secrets that had been misappropriated by CLEAResult. (Dkt. 271-13 Under Seal.)

47.     On July 27, 2018, NEXT supplemented its response to Interrogatory 21 to incorporate by reference Dr. Valerdi's expert report.

48.     On July 31, 2018, Judge Castillo denied CLEAResult's motion to compel a more specific answer to Interrogatory 21. (Dkt. 125)

49.     Also on July 31, 2018, the date that discovery closed, Judge Castillo denied CLEAResult's motion to dismiss NEXT's VAC in pertinent part, dismissing only the fraud claim without prejudice, and the unfair competition claim. (Dkt. 125)

50.     Depositions in the Federal Litigation were completed in late September 2018.

51.     Bogart timely filed a Second Amended Complaint on September 18, 2018. (Dkt. 169-174.)

52.     On September 25, 2018, CLEAResult filed objections to NEXT's Second Amended Complaint. (Dkt. 177) On October 9, 2018, Judge Castillo granted CLEAResult's motion and struck the Second Amended Complaint, not because of any defect in the pleading or the fraud claim, but because allowing the Second Amended Complaint would have required re-opening discovery and delaying the trial. (Dkt. 186; Dkt. 187 at 5-6.)

53.     On October 23, 2018, CLEAResult filed a motion for summary judgment. (Dkt. 190-194.)

54.     On November 20, 2018, Bogart representing NEXT filed a response to CLEAResult's motion for summary judgment. (Dkt. 210-213, 245 (filing under seal)).

55.     On the February 27, 2019 Memorandum Opinion, Judge Castillo denied

CLEAResult's motion for summary judgment on NEXT's DTSA claim finding:

> The Court, however, finds that Plaintiff's DTSA claim
> survives summary judgment to the extent it pertains to
> the features of the FAST Tool that were not part of
> DSMTracker before Defendant transitioned from the
> FAST Tool to DSMTracker. Plaintiff has come forward
> with evidence showing that Defendant's DSMTracker did
> not have all of the software features that Plaintiff's FAST
> Tool had, such as online scheduling and inventory
> management, and that those software features were
> added to DSMTracker after Defendant accessed the Next
> System Back End. * * * The features of the FAST Tool that
> DSMTracker did not have, including the FAST Tool's inventory
> tracking and management features, are specific enough trade secrets
> to survive summary judgment.

(Dkt. 285)

56.     On March 13, 2019, Judge Castillo issued an order setting April 15, 2019 as the

date for filing the joint pretrial order and May 20, 2019 as the date for commencement of the trial.

(Dkt. 287.)

57.     On March 21, 2019, CLEAResult moved to compel an identification of trade

secrets for trial. (Dkt. 288-289.)

58.     On March 26, 2019, Judge Castillo granted CLEAResult's motion to compel

identification of trade secrets for trial, ordered NEXT to supplement its identification by April 26,

2019, and stated that the date for filing the pretrial order would not be reset until May 8, 2019.

(Dkt. 296.)

59.     On April 19, 2019, NEXT served its Identification of Trade Secrets for Trial ("Trial

Identification"), which was filed with the Court on the same date along with a motion to set the

date for the pretrial conference.  (Dkt. 301-303). NEXT's Trial Identification consisted of a 29-

page memorandum, which included each of the categories of information requested in
CLEAResult's motion, and which specifically identified,

- The precise software features at issue including what these features do and
  where in the software they are located;
- NEXT's basis for contending each such feature is a trade secret, including the
  steps NEXT had taken to keep the features confidential and why the feature
  was not readily ascertainable to CLEAResult;
- The point in time at which the FAST Tool had such features;
- NEXT's basis for contending that CLEAResult's DSMTracker software
  lacked such features at the time CLEAResult acquired it, incorporating by
  reference a portion of NEXT's response to CLEAResult's prior motion for
  summary judgment); and,
- Where in the DSMT software such features now appear and in a 13-page
  table, attached to the Trial Identification as Exhibit A, which identified for
  each alleged trade secret the exact location where it was found in
  DSMTracker, along with evidence of the same, and the matching
  CLEAResult description of it from a document produced by CLEAResult.

60.    Matt Peterson spent dozens and dozens of hours in conversations, hundreds of
hours of his own time collecting information for purposes of describing NEXT's trade secrets.

61.    In addition to Peterson's time, Bogart devoted 74.4 hours; Cohen devoted 114.5
hours and Dr. Valerdi, NEXT's technical expert, spent 49.3 hours formulating NEXT's
supplemental description of the trade secrets that were misappropriated by CLEAResult.

62.    On April 29, 2019, Judge Castillo set May 10, 2019 as the date for filing the joint
pretrial order, and May 15, 2019 as the date for the pretrial conference.

63.    On May 2 and May 3, 2019, CLEAResult filed a flurry of motions, including a
motion seeking discovery sanctions to exclude NEXT from presenting evidence of trade secrets at
trial (Dkt. 309-310), and a motion to vacate the dates for the pretrial order and trial. (Dkt. 319.)

64.    On May 8, 2019, Judge Castillo denied CLEAResult's motion to exclude NEXT's
trade secrets as identified for trial. (Dkt. 301-303):

> CLEAResult Consulting, Inc. ("Defendant") moves to exclude
> NEXT Payment Solutions, Inc.'s ("Plaintiff") evidence of alleged

12

> trade secrets as a discovery sanction pursuant to Federal Rule of Civil Procedure 37(b)(2) for failure to obey the Court's order compelling Plaintiff to identify its trade secrets with more particularity. * * * This Court has "wide latitude in fashioning appropriate sanctions" and may sanction Plaintiff for failing to comply with its discovery orders. * * * The Court concludes that Plaintiff has supplemented its identification of the trade secrets at issue and complied with the Court's orders. Defendant argues that the supplemental identification is not enough for Plaintiff to maintain its trade secret claims, but that argument goes to the merits and is an issue properly raised in a dispositive motion or at trial instead of a discovery motion.* * * Accordingly, the Court denies Defendant's motion for sanctions.

(Dkt. 323)

65.    In the same Order, Judge Castillo granted Defendant's request to re-open expert discovery for 30 days to allow Defendant to supplement its expert report. (*Id.* at 2.).

66.    In the same Order, Judge Castillo also grant[ed] Defendant's request for leave to file a motion for summary judgment "on the narrow issue of whether Plaintiff has sufficiently identified any trade secrets," and ordered that CLEAResult could "file such a motion within 45 days of the date of this order," [which would be 6/23/19] and gave NEXT 14 [which would be 7/7/19] days to respond and CLEAResult 10 days to file a reply [which would be 7/17/19, after the 7/10/19 pretrial conference], indicating that a ruling on the motion would issue by mail. (*Id.*)

67.    In the same Order, Judge Castillo set the deadline for filing the pretrial order as July 9, 2019, for the pretrial conference as July 10, 2019, and set August 8, 2019 as the date for commencement of the trial on NEXT's motion for preliminary injunction and on the merits of NEXT's misappropriate of trade secrets claim under the DTSA, breach of contract, unjust enrichment and promissory estoppel claims.

68.    On June 7, 2019, CLEAResult served the supplemental expert report of its technical expert, Dr. Michael Shamos.

### C.  Bogart's Preparations for Trial

69.  In May 2019, Bogart was engaged in trial preparation including preparation of motions in limine, responses to CLEAResult's motions, preparation of exhibit lists for trial and objections to CLEAResult's in excess of 2500 exhibits. (SB 46).

70.  As of June 10, 2019, CLEAResult and NEXT had exchanged exhibit lists for trial and objections to proposed exhibits.

71.  As of June 10, 2019, Bogart had also prepared draft jury instructions, motions in limine, itemization of damages, and designations of deposition transcripts.

72.  As of June 10, 2019, Bogart and Cohen were ready to try the Federal Litigation against CLEAResult scheduled to begin less than 2 months away on August 8, 2019.

### D.  Defendants' Tortious Interference with Bogart's Contract and Business Relations with NEXT

73.  At the time of the NEXT litigation, Defendant Paul Thanasides had known Maximilian Amster for a long time, having gotten to know him in representing Mr. Amster's real estate focused fund that predated Veridis.

74.  In 2017, Mr. Thanasides advised Amster in connection with Amster's decision to start a litigation financing fund.

75.  Defendant Paul Thanasides and his law firm, the McIntyre Firm, had a Master Engagement Agreement with Defendant Veridis and/or its family of funding entities.

76.  Mr. Thanasides himself represented Veridis with more than 10 issues and matters.

77.  Mr. Thanasides monitored NEXT's Federal Litigation for Veridis beginning in approximately December 2018. As part of this monitoring, Thanasides reviewed the filings in the NEXT litigation in case No. 17-8829, including expert reports. One of the expert reports is that of

a damages expert that identified very substantial damages caused to and that could be recovered by NEXT.

78.     From the start of his involvement in the case on behalf of Veridis, defendant Thanasides sought to become a member of NEXT's litigation team despite the clear conflict of interest and violation of the Rules of Professional Responsibility.

79.     Beginning at least as early as March 2019, Veridis and Mr. Thanasides took steps to wrongfully induce NEXT to terminate Cohen as NEXT's counsel without consultation with Bogart, to remove Bogart as lead counsel, to substitute new counsel, to reduce Bogart's 40% Partial Contingent Fee and/or terminate Bogart as NEXT's counsel in order to compensate new counsel, all before the August 8, 2019 trial. Defendant Thanasides told his client defendants Amster and Veridis not to fund the additional costs submitted by Bogart on NEXT's behalf.

80.     On May 3, 2019, Amster on behalf of Veridis sent an email to Peterson on behalf of NEXT, Bogart, Cohen, and Thanasides stating that Veridis had agreed to provide NEXT with additional financing for litigation expenses, conditioning those funds in part on "Finalization of Client-Attorney Agreements" stating "We understand these may be in flux and need to understand any changes since our understanding of the attorney-client compensation arrangements is a material part of the pursuit of the Claim (as outlined in our agreement)."

81.     Beginning at least as early as May 21, 2019, Defendants Thanasides and Amster, without consultation with NEXT's counsel Bogart and Cohen, reviewed and selected defendant Devan Padmanabhan, then with defendant the Padda Group, and directed NEXT, again without involving NEXT's counsel Bogart and Cohen in violation of Rules 4.2 and 7.3 of the Illinois Rules of Professional Responsibility, to involve Devan Padmanabhan in the NEXT v. CCI litigation and to provide access to NEXT's trade secrets and information and discovery in the NEXT v. CCI

litigation. As of May 21, 2019, neither Mr. Thanasides nor Mr. Padmanabhan were attorneys of record on behalf of NEXT in the Federal Litigation.

82.    In violation of Rule 7.1 of the Professional Rules of Responsibility, defendants misled NEXT about its counsel Bogart and Cohen and its federal claims, stating that the district court had sanctioned NEXT when in truth and fact as defendants well knew, the district court denied CCI's motion for sanctions.

83.    Also, in violation of Rule 7.1 of the Professional Rules of Responsibility, defendants misled NEXT by telling it that its identification of trade secrets for trial were not adequate to present NEXT's trade secrets to a jury.

84.    Also, in violation of Rule 7.1 of the Professional Rules of Responsibility, defendants misled NEXT by telling it that its case was understaffed and Bogart and Cohen could not handle NEXT's upcoming trial.

85.    Defendants misled NEXT into believing that defendants Devan Padmanabhan and Thanasides were competent and qualified to represent NEXT in the *NEXT v. CCI* litigation and upcoming trial date of August 8, 2019 in violation of Rule 1.1 of the Illinois Rules of Professional Responsibility.

86.    In fact, however, neither defendant Thanasides nor defendant Padmanabhan identified any substantial federal trial, or first chair experience, neither identified any substantial experience involving trade secrets cases, and neither had practiced in the U.S. district court for the Northern District of Illinois where the *NEXT v. CCI* litigation was pending and that would qualify them to undertake the NEXT litigation, second guess Bogart, Cohen, NEXT or NEXT's technical expert.

87. On May 21, 2019, NEXT executed an engagement agreement with defendant Padmanabhan and his firm, the Padda Group, in which NEXT agreed to compensate them on an hourly rate basis for work performed in connection with the *NEXT v. CCI* litigation.

88. On May 21, 2019, Matt Peterson sent an email to Bogart at 3:07 p.m. stating in pertinent part that after discussions with Max [Amster (Veridis) and Jill:

> NEXT is retaining Devan Padmanabhan as co-counsel, Veridis
> will pay Devan's bills as part of the to-be-revised budget.
> Devan's primary responsibility is identifying and communicating
> what was stolen to the judge and jury* * * Nobody is being
> replaced or supplanted and I would like to see a continuation of our
> team's collaboration.

89. Bogart was told that Devan Padmanabhan was coming in to provide a "second opinion" as the case proceeded to trial.

90. On May 29, 2019, Defendant Thanasides devoted 4.5 hours of work that he billed to NEXT having conferences and speaking with defendants Amster and Padmanabhan about NEXT.

91. Also on May 29, 2019, NEXT scheduled a conference call with Bogart and Cohen which defendants Thanasides, Amster and Padmanabhan attended. Peterson, CEO for NEXT, stated this was a really important call because he was still in negotiations with defendants Amster and Veridis about additional funding of litigation costs through trial.

92. On May 29, 2019, May 30, 2019, May 31, 2019 defendants Thanasides, Amster and Padmanabhan had numerous calls totaling at least 20 hours about NEXT without involving NEXT's counsel Bogart or Cohen.

93. On May 30, 3019, at her client NEXT's request, and without notice of the actions of Thanasides, Amster and Padmanabhan, Bogart submitted a proposed revised trial budget to Veridis to cover expected costs and expenses through the conclusion of the trial now set for August

8, 2019. The proposed budget included no attorneys' fees in light of NEXTs May 2018 Agreement with Bogart.

94.     On June 6, 2019, Matt Peterson and Devan Padmanabhan had a telephone conversation with Bogart in which Peterson and Padmanabhan proposed to alter the 2018 Engagement agreement between NEXT and Bogart and Cohen. Specifically, Peterson and Padmanabhan said that Bogart was being replaced as lead counsel with defendant Padmanabhan, Cohen was being fired and Bogart and Cohen's Partial Contingent Fee percentage recovery was being reduced to 5% so that the 40% could be distributed to other counsel, and for a payment of $ 500, 000 Bogart could remain on the case to answer questions only.

95.     In that same conversation, defendant Padmanabhan misled NEXT into believing that under Illinois law if Bogart and Cohen were discharged as NEXT's attorneys, NEXT would only have to compensate Bogart and Cohen based on an hourly rate and not their Partial Contingent Fee under the May 2018 Engagement Agreement.

96.     On June 7, 2019, defendants Thanasides and his firm entered into an engagement agreement with NEXT to provide legal representation in the Federal Litigation in which NEXT was suing CCI under which NEXT would compensate Thanasides' and his firm on an hourly rate basis at 75% their usual hourly rate and a contingent fee percentage of any recovery "as agreed between" the McIntyre Firm and the Padda Group. Subsequently, defendant Thanasides and his firm received a contingent fee of 5% of any recovery in the *NEXT v. CCI* case and, on June 27, 2019, defendant Padmanabhan and his firm executed a revised engagement agreement with NEXT in which NEXT agreed to compensate Padmanabhan and his firm an hourly rate and a contingent fee of 10% of any recovery in the *NEXT v. CCI* case.

97.     In an email dated June 7, 2019, Bogart agreed to go forward as NEXT's counsel under the terms of the May 2018 Engagement Agreement where Bogart would remain as lead counsel, Eric Cohen would remain as counsel for NEXT and to the extent NEXT wanted defendant Devan Padmanabhan to be involved, Bogart agreed to involve him the representation of NEXT but at NEXT's expense. Among other things, Bogart made clear to NEXT that under Illinois law Bogart and Cohen would not only be entitled to *quantum meruit* fees which could include not only hourly rate compensation but also some or all of the Partial Contingent Fee.

98.     On June 10, 2019, Bogart and Cohen spoke to NEXT's technical expert Ricardo Valerdi regarding his view as to whether a supplemental affidavit would be required to rebut the supplemental report of Michael Shamos.

99.     By email dated June 10, 2019, Bogart advised Mr. Peterson that, "based on reviewing Dr. Shamos' report that NEXT will be required to submit a supplemental report from Dr. Valerdi to that report as well as in response to the anticipated motion for summary judgment based on CCI's letter of last week describing the motion . . .."   Bogart also confirmed in the same email, "I did not accept your oral proposal of June 6 as my June 7 email makes clear.

100.    In an email dated June 10, 2019, subsequent to Bogart's June 10 email, Mr. Peterson terminated Bogart as attorney in the Federal Litigation, stating in pertinent part:

> I am sorry that we could not reach agreement on a financial settlement and on your role going forward on the NEXT Payment Solutions, inc. v. CLEAResult Consulting, Inc., Civ No. 17-C-8829. As the CEO of NET Payment Solutions, Inc. ("NEXT"), I am writing to officially notify you that NEXT has retained Devan Padmanabhan and Padmanabhan & Dawson PLLC to represent it in connection with the above-referenced litigation, and no longer requires your services or the services of the Law Offices of Susan Bogart. This email terminates all of NEXT's agreements (including the Engagement Agreement dated May 21, 2018) with the Law Offices of Susan Bogart regarding your representation of NEXT in the above-referenced matter.

101.    Bogart successfully met the Court's expedited discovery schedule and brought viable claims for misappropriation of trade secrets under the DTSA, unjust enrichment, breach of contract and promissory estoppel to trial on its preliminary injunction and on the merits in 19 months, where the median time from filing to disposition in the Northern District of Illinois for such a case to get to trial was 39 months.

102.    On June 10, 2019, defendant Padmanabhan and other attorneys with the Padda Group moved for leave to appear in the *NEXT v. CCI* litigation pro hac vice.

103.    On June 12, 2019, defendant Thanasides and other attorneys with the McIntyre Firm moved for leave to appear in the *NEXT v. CCI* litigation pro hac vice.

104.    Defendants Thanasides and other attorneys with the McIntyre Firm and defendant Padmanabhan and other attorneys with the Padda Group continued to represent NEXT through entry of a final judgment on February 12, 2024. These defendants gave up the August 8, 2019 trial date, failed to adequately represent NEXT in the ongoing litigation and never tried NEXT's claims or to obtain a recovery for NEXT based on CCI's misappropriation of NEXT's trade secrets.

105.    Additionally, defendants Padmanabhan and the Padda Group continue to represent NEXT before the U.S. Court of Appeals in NEXT v. CCI in Appeal No. 24-1377, an appeal filed on March 11, 2024 from the district court's final judgment. This Appeal is pending at the time this lawsuit was filed.

106.    Also, attorney Joseph Salario, Managing Director of Veridis Investments and Shareholder in the Lawson Huck Gonzalez PLLC firm and other attorneys with that firm represent NEXT before the U.S. Court of Appeals in NEXT v. CCI in Appeal No. 24-1377, an appeal from the district court's final judgment.

E.    **The Value of Bogart's Services to NEXT**

107.    Following a hearing before a JAMS arbitrator to value Bogart's services to NEXT, on August 2, 2022, the Circuit Court of Cook County entered Judgment in Favor of Bogart in the amount of $ 2, 472, 529.80 in fees and costs.

108.    Bogart was also awarded an additional recovery if 36% of any recovery in the *NEXT v. CCI* litigation exceeded $ 2, 472, 529.80, then NEXT is required to pay the difference between those amounts to Bogart.

109.    The amounts NEXT owes Bogart remain unpaid.

## COUNT I

### (Tortious Interference with Business Relations)

110.    Plaintiff repeats and realleges the allegations in the preceding paragraphs 1-109 as if fully set forth herein.

111.    As set forth above, by June 10, 2019, Bogart and NEXT had a strong business relationship for 19 months during which time Bogart successfully prosecuted NEXT's Defend Trade Secrets, Illinois Trade Secrets, breach of contract and unjust enrichment claims and had successfully secured an August 8, 2019 trial date and had prepared pretrial materials in order to begin trial in the NEXT v. CCI litigation pending the U.S. district court for the Northern District of Illinois, No. 17-8829.

112.    Defendants Thanasides and the McIntyre firm, Maximilian Amster and Veridis Management LLC, and Padmanabhan and the Padda Group knew of Bogart's and NEXT's 19-month relationship and that the trial was set for August 8, 2019 and intentionally interfered with that relationship by misleading NEXT and violating the Professional Rules of Responsibility in

order to substitute Thanasides and members of his firm and Padmanabhan and members of his firm as NEXT's counsel.

113.    Defendants Thanasides and the McIntyre firm, Maximilian Amster and Veridis Management LLC, and Padmanabhan and the Padda Group acted out of malice, and used dishonest, unfair and improper means to interfere with Bogart's and NEXT's relationship.

114.    Defendants Thanasides and the McIntyre firm, Maximilian Amster and Veridis Management LLC, and Padmanabhan and the Padda Group's interference with Bogart's and NEXT's business relationship was not in the best interests of NEXT and was in the financial interests of Defendants Thanasides and the McIntyre firm Maximilian Amster and Veridis Management LLC, and Padmanabhan and the Padda Group.

115.    Defendants Thanasides and the McIntyre firm, Maximilian Amster and Veridis Management LLC, and Padmanabhan and the Padda Group interference with Bogart's and NEXT's relationship caused injury to Bogart by, among other things, preventing Bogart from trying NEXT's claims and completing its relationship with NEXT.

116.    As a result, Bogart has suffered significant damages, including at the least loss of attorneys' fees and costs in the amount of at least $ 2, 472, 529.80, plus post judgment interest accruing at the rate of 9% from August 2, 2022 through the present.

## COUNT II

### (Tortious Interference with Contract)

117.    Plaintiff repeats and realleges the allegations in the preceding paragraphs 1-116 as if fully set forth herein.

118.    As set forth above, Bogart and NEXT had a written Engagement Agreement for 19 months for Bogart to prosecute NEXT's Defend Trade Secrets, Illinois Trade Secrets, breach of

contract and unjust enrichment claims to trial in the NEXT v. CCI litigation pending the U.S. district court for the Northern District of Illinois, No. 17-8829. Bogart fulfilled its obligations under this Agreement

119.    Defendants Thanasides and the McIntyre firm, Maximilian Amster and Veridis Management LLC, and Padmanabhan and the Padda Group knew of that Engagement Agreement and intentionally interfered with it by misleading NEXT and violating the Professional Rules of Responsibility.

120.    Defendants Thanasides and the McIntyre firm, Maximilian Amster and Veridis Management LLC, and Padmanabhan and the Padda Group intentionally procured the termination of the Engagement Agreement without justification by acting out of malice, and using dishonest, unfair and improper means and to interfere with Bogart's and NEXT's relationship and to line their own pockets.

121.    Defendants Thanasides and the McIntyre firm, Maximilian Amster and Veridis Management LLC, and Padmanabhan and the Padda Group's interference with Bogart's and NEXT's engagement agreement contract was not in the best interests of NEXT and was in the financial interests of Defendants Thanasides and the McIntyre firm Maximilian Amster and Veridis Management LLC, and Padmanabhan and the Padda Group.

122.    As a result of Defendants' conduct, NEXT terminated the May 21, 2018 Engagement Agreement with Bogart on June 10, 2019.

123.    As a result of the aforesaid, Bogart has suffered significant damages, including at the least loss of attorneys' fees and costs in the amount of at least $ 2, 472, 529.80, plus post judgment interest accruing at the rate of 9% from August 2, 2022 through the present.

.

124. As a result of the aforesaid, Bogart was not able to complete the trial of NEXT's claims against CCI and its representation under the terms of Bogart and NEXT's engagement agreement contract.

## COUNT III

### (Civil Conspiracy)

125.    Plaintiff repeats and realleges the allegations in the preceding paragraphs 1-124 as if fully set forth herein.

126.    Defendants Thanasides and the McIntyre firm, Maximilian Amster and Veridis Management LLC, and Padmanabhan and the Padda Group entered into an agreement to deprive Bogart of its property interests in its business and contractual relationship with NEXT to represent NEXT in the CCI litigation and prosecute NEXT's claims.

127.    In furtherance of this agreement, defendants Thanasides and the McIntyre firm, Maximilian Amster and Veridis Management LLC, and Padmanabhan and the Padda Group took the steps set forth in paragraphs 1 through 126 of this Complaint.

128.    Bogart was injured because of these unlawful overt acts performed by defendants Thanasides and the McIntyre firm, Maximilian Amster and Veridis Management LLC, and Padmanabhan and the Padda Group.

129.    The overt acts were done in furtherance of and pursuant to defendants' plan to deprive Bogart of its property interests in its business and contractual relationship with NEXT to represent NEXT in the CCI litigation and prosecute NEXT's claims and to line their own pockets in violation of the Illinois Rules of Professional Responsibility.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Bogart and against defendants Thanasides, the McIntyre firm, Maximilian Amster, Veridis

Management LLC, Devan Padmanabhan and the Padda Group and award all damages to which Bogart is entitled including but not limited to compensatory damages in at least the amount of $ 2, 472, 529.80 plus post judgment interest in the amount of 9% from August 2, 2022 through judgment, an additional recovery consisting of the difference between $ 2, 472, 529.80 and 36% of any recovery in the *NEXT v. CCI* litigation, punitive damages and any other relief this Court deems appropriate.

Dated: June 6, 2024.

RESPECTFULLY SUBMITTED,

LAW OFFICES OF SUSAN BOGART

By:/s/ *Susan Bogart*

Law Offices of Susan Bogart
111 W. Jackson Blvd., Ste. 1700
Chicago, IL  60604
312-214-3271
Sbogart514@aol.com
sbogart@susanbogart.com

RT **449**
1
10:30 **A**
FZ
5335
06.07

ORIGIN ID:NCOA (847) 853-1392
SUSAN BOGART
BOGART, SUSAN, ATTORNEY AT LAW
16 QUOQUONSET LN

LITTLE COMPTON, RI 02837
UNITED STATES US

SHIP DATE: 06JUN24
ACTWGT: 1.30 LB
CAD: 6571719/ROSA2530

BILL THIRD PARTY

TO **CLERK OF THE COURT**
**US DISTRICT COURT**
**219 S DEARBORN ST**
**20TH FLOOR**
**NORTHERN DISTRICT COURT OF ILLINOIS**
**CHICAGO IL 60604**

(000) 000-0000        REF:
PO:                  DEPT:

**FedEx**
Express

**E**



**FRI – 07 JUN 10:30A**
**PRIORITY OVERNIGHT**

TRK#  **7767 3189 5335**
0201

**XS CHIA**

**60604**
IL–US  **ORD**

Align bottom of peel-and-stic